

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

April 20, 1959

Mr. Reagan Huffman
Chairman, Liquor Regulation
    Committee
House of Representatives
Austin, Texas

Opinion No. WW- 598

Re: Constitutionality of
    H.B. 57, 56 Leg., re-
    lating to whether or
    not the State may tax
    beer sold to and con-
    sumed on Military Re-
    servations within the
    State.

Dear Mr. Huffman:

We quote from your opinion request as follows:

"Pursuant to a motion duly made and passed
by the Liquor Regulation Committee, I am
herewith submitting to you the original
H.B. 57 for an opinion as to its constitu-
tionality.

"The specific question involved is whether
or not the State of Texas may tax beer which
is sold to and consumed on Military Reserva-
tions within this State."

Section 1 of H.B. 57 amends Article 667-23½ (d)
V.P.C. to omit the exemption and refund provision pertaining
to beer "shipped to any installation of the National Military
Establishment, wherein the State of Texas has ceded police
jurisdiction, for consumption by military personnel within
said installation." Section 2 omits the exception of "military
beer consigned to military installations" from the requirement
that all beer shipped into this State be consigned to the holder
of a Manufacturer's, General Distributor's, Branch Distributor's
or Local Distributor's license, and adds the sentence:

"Nothing in this section shall prohibit the
holders of a Manufacturer's, General Distri-
butor's, Branch Distributor's, or Local Dis-
tributor's License to sell beer, on which the
tax thereon levied in Section 23 or /sic/ Article
II of the Texas Liquor Control Act has been paid,
to Federal Government Instrumentalities in the
State." (Emphasis added)

Article 667-23, V.P.C., provides:

"There is hereby levied and assessed a tax at the rate of $1.37 per barrel on the _first sale_ of all beer manufactured in Texas and on the _importation_ of all beer imported into this State." (Emphasis added)

Title 4, U.S.C.A., Section 105 grants to the States the power to levy and collect sales and use taxes within Federal areas. Section 107(a) states that this shall not be deemed to authorize the levy or collection of _any_ tax on or from the United States or any instrumentality thereof, or the levy or collection of any tax with respect to _sale, purchase, storage_ or _use_ of tangible personal property sold by the United States or any instrumentality thereof to any authorized purchaser. (Section 107(b) defines "authorized purchaser.")

The foregoing provisions are controlling. The state may not tax importations of beer by any Federal Government Instrumentality; nor may it tax "first sales" of beer to any Government Instrumentality, or by such Instrumentality to "authorized persons." See Attorney General's Opinion No. WW-582. The State has the authority to tax all other "importations" and "first sales," regardless of whether such "importations" and "first sales" occurred within Federal areas. For the reasons stated in the Attorney General's Opinion cited, supra, no issue of constitutionality is raised by repeal of the exemption and refund provisions regarding beer shipped to Military Establishments.

The specific question in your opinion request was whether or not the State may tax beer which is sold to and consumed on Military Reservations. However, Section 2 of H.B. 57 raises another issue so intimately related to this problem that it must also be considered, i.e., the validity of the amendment to Section 29 of Article 667, V.P.C. The amendment is designed to aid collection of the tax on beer sold to Military Establishments. Omission of the exemption of "military beer consigned to military installations" from the requirement that all beer imported into the State be consigned to the holder of one of the enumerated permits in effect requires a permit for the importation of beer into military establishments. In cases where the State of Texas has ceded police jurisdiction to the United States, the State is without power to issue or require the purchase of permits or licenses, since such permits or licenses are imposed under the State's police power to control the alcoholic beverage business. Attorney General's Opinion No. WW-354, 0-3216. See also Collins v. Yose

mite Park & Curry Company, 304 U.S. 518 (1938). Since the state cannot require the licensing of a consignee within a Federal area in which police jurisdiction has been ceded, it cannot accomplish the same result indirectly by requiring that all beer imported into the state be consigned to the holder of a license. Further, such a requirement would constitute an undue interference with interstate commerce. The case of Murphy v. Love, 249 Fed. 2d 783 (U.S. D.C. 1957, Cert.Den. 355 U.S. 958) contains the following statement on point:

> "Since Kansas does not have territorial jurisdiction to regulate liquor in the Federal enclave it has no authority to impose revenue measures concerning liquor which are inseparable from such regulatory aspects of the Act. The effect of what it seeks to do by the regulatory provisions of its law is to make impossible the purchase or sale of liquor on the Reservation, or importation of liquor in interstate commerce into the Reservation. Such a construction would not only place a burden on interstate commerce of liquor to the Reservation but would stop it entirely. In Johnson v. Yellow Cab Transit Company, 10 Cir., 137 F. 2d 274, 279, we said that the '. . . state has no power to forbid the transportation in interstate commerce of intoxicating liquor through its territorial boundaries.' and that a State '. . . has no jurisdiction to require or grant permits for the importation of intoxicating liquors into. . . .' a reservation." (Emphasis added)

Therefore, the requirement that all beer imported into Texas be consigned to the holder of a license is inoperative as respects beer consigned to military establishments in which police jurisdiction has been ceded.

The last sentence of the amended Section 29 implicitly requires the payment of taxes on all beer sold to Federal Government instrumentalities. Such a requirement is in direct contravention of the constitutional prohibition against taxation of the Federal Government by the State Government embodied in Title 26 U.S.C.A., Section 107. See Falls City Brewing Company v. Reeves, 40 F. Sup. 35 (U.S. D.C., W.D. Ky. 1941); James v. Dravo Contracting Co., 302 U.S. 134 (1937). Consequently this provision is void.

## SUMMARY

The State may not tax importations of beer by any Federal Government Instrumentality; nor

**2920**

may it tax "first sales" of beer to any Government Instrumentality, or by such Instrumentality to any "authorized purchaser." The State has the authority to tax all other "importations" and "first sales," regardless of whether such "importations" or "first sales" occurred within Federal areas.

The State has no power to require the licensing of consignees of beer in Federal areas where police jurisdiction has been ceded, and cannot indirectly accomplish the same result by requiring that all beer imported into the State be consigned to the holder of a license; such a requirement is further unconstitutional as constituting an undue interference with interstate commerce. Therefore, the requirement that all beer imported into Texas be consigned to the holder of a license is inoperative as respects beer shipped to consignees within military establishments in which police jurisdiction has been ceded.

The implicit requirement of the last sentence of Section 2, H.B. 57, that taxes be paid on all beer sold to Federal Government instrumentalities is in direct contravention of the constitutional prohibition against taxation of the Federal Government by the State Government embodied in Title 26, U.S.C.A., Section 107, and is void.

Yours very truly,

WILL WILSON
Attorney General of Texas

By _JACK N. PRICE_
JACK N. PRICE
Assistant

JNP:cm

APPROVED:

OPINION COMMITTEE:
Geo. P. Blackburn, Chairman

C. Dean Davis
C. K. Richards
Elmer McVey
Linward Shivers

REVIEWED FOR THE ATTORNEY GENERAL
By: W. V. GEPPERT